# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3960 | **DATE** | 3/18/2003 |
| **CASE TITLE** | Debbie Andrekus, et al vs. Board of Education of Dist. U-46, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at_____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss the plaintiffs' complaint is granted as to Counts III, IV, and V and denied without prejudice as to Counts I and II [5-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 2 0 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 MAR 19 AM 8:52 FILED | date mailed notice mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBBIE ANDREKUS and DEBORAH VANZUIDAM, an Illinois Corporation.<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF EDUCATION OF DISTRICT U-46, et al.,<br><br>Defendants. | No. 02 C 3960<br>Judge Ronald A. Guzman |

DOCKETED
MAR 20 2003

## MEMORANDUM OPINION AND ORDER

Pending is Defendants Board of Education District U-46, Marvin Edwards, Richard P. Majka, Dr. Maria Smith, Ron Kalicki, Robert Hain, and Diane McFarlin's motion to dismiss plaintiffs Debbie Andrekus and Deborah VanZuidam's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below the motion to dismiss is denied as to Counts I <u>and</u> II and is granted without prejudice as to Counts III, IV, and V.

## BACKGROUND

The plaintiffs, Andrekus and VanZuidam, at the time of filing were both certified, tenured special education teachers employed at Streamwood High School in the Village



of Streamwood, Cook County, Illinois by District U-46. District U-46 is organized and operated pursuant to the Illinois School Code, and as such the Board of Education (The Board) was charged with the duty of running the District pursuant to the Illinois School Code. On June 4, 2002 plaintiffs filed their complaint against the defendants, who hold the following positions in the school system: Marvin Edwards, Superintendent of the District, Richard P. Majka, Assistant Superintendent of the District in charge of labor issues, Robert Hain, Special Education Supervisor, Dr. Maria Smith, Director of Special Education, Ron Kalicki, Principal of Streamwood High School, Diane McFarlin, Special Education Chairperson and Dean of the Special Education students attending Streamwood High School, and the Board of Education District U-46 itself.

Count I alleges a First Amendment violation under 42 U.S.C. 1983 against all defendants. Count II alleges an Equal Protection violation under 42 U.S.C. 1983 against all defendants. Count III alleges a conspiracy under 42 U.S.C. 1985 against all defendants. Count IV alleges the failure to prevent a conspiracy under 42 U.S.C. 1986 against all defendants. Count V alleges a state law tort claim for Intentional Infliction of Emotional Distress against all defendants.

Prior to September 26, 2001, the plaintiffs made numerous complaints to the Special Education Supervisor and Chairperson concerning various aspects of administration of the special education department at Streamwood High School. It was known that the manner in which Special Education classes were assigned violated state requirements, but at a meeting Robert Hain told the teachers to file a grievance if they did not like their schedules. On May 7, 2001 a Union grievance was filed concerning the number of classes assigned to each special education teacher and the number of students

in each class. The defendants did not take any action concerning these initial complaints until August 9, 2001, two weeks prior to the beginning of the school year. At the hearing, the district representative ignored the explanation that the assigned schedules were not beneficial to either the students or the teachers at Streamwood High School and upheld the scheduling, in spite of known violations.

Then, on September 26, 2001, Debbie Andrekus sent a written complaint to the Illinois State Board of Education (ISBE) stating various violations of the law by the Special Education Department of Streamwood. The ISBE was made aware of the compliance problems at Streamwood High School, and on December 4, 2001 notified Marvin Edwards and Maria Smith that the district was in violation of the law. By February 7, 2002, the district had not fully complied with the required remedial action.

Prior to the complaints concerning the violations of Special Education regulations, the plaintiffs had always received positive performance evaluations and were treated the same as other similarly situated employees. Since the complaints, the defendants, both individually and collectively, have allegedly engaged in a pattern of ill willed and malicious harassment against the plaintiffs in retaliation for bringing the illegal acts of the defendants to the attention of the Union and the ISBE. Examples of such alleged behavior include: assigning the two plaintiffs (certified, tenured special education instructors) to two consecutive lunch monitoring periods when no other teacher in the school has more than one, soliciting students to spy on the plaintiffs and report back to Robert Hain and Diane McFarlin, hiring a non-certified substitute teacher to teach the plaintiff's classes while they were assigned to three supervisory periods throughout the day, false accusations of failures to give proper notice of absences from

3

work and failing to obtain substitute teachers on those occasions, failing to properly record disciplinary referrals written by the plaintiffs, failing to honor grievance rights of the plaintiffs when the Board allowed Robert Hain and Diane McFarlin to act as part of the Executive Session discussing the grievance, making untrue and disparaging remarks about the plaintiffs to other faculty members and parents of students at Streamwood High School, canceling pre-approved field trips that were a part of the Special Education students Individualized Education Programs and Behavior Management Plans without notice, removing plaintiffs as special education case managers without notice, and failing to notify plaintiffs of Individualized Education Program meetings until the last moment thereby depriving the plaintiffs the opportunity to adequately prepare for the meetings.

Plaintiffs allege that the defendants, through this conspiratorial sequence of events, have violated their First and Fourteenth Amendment rights as well as intentionally inflicted severe emotional distress upon them.

## **DISCUSSION**

Defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The defendants assert that the plaintiffs' complaint fails to state a claim upon which relief can be granted.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). On a motion to dismiss all well-plead factual allegations are admitted as true and are construed in a light most favorable to the plaintiff, as are all inferences from the facts. *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992). A court

4

should dismiss a claim only if "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998). Defendants assert that the plaintiffs' claims are subject to dismissal because they do not meet this burden as a matter of law.

### Board of Education Immunity

The Eleventh Amendment provides immunity from prosecution under 42 U.S.C. § 1983 for states and their officials acting in their official capacities, as states do not fit into the definition of a person for purposes of the section. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). The same does not hold true for municipalities and other local governmental units, such as school boards. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690, 696 (1978). Under *Monell*, a school district cannot be held liable under a *respondeat superior* theory. In order to recover against a school board under 42 U.S.C. § 1983 the plaintiffs must show that the civil rights violations resulted from either (1) an express policy of the district, (2) a widespread practice or custom within the district, or (3) the actions of a person with final policymaking authority. *See Id.* at 691, 694; *see also Looper Maintenance Serv. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1998).

Plaintiffs pled in paragraph 21 of the complaint that the defendants "individually and collectively engaged in a pattern of harassment" against the plaintiffs. (Compl. ¶ 21.) Additionally, under Illinois state law the Board of Education has final policymaking authority. 105 ILCS 5/10-20.5 (West 2002). When a Board vested with policymaking authority is aware of and participates in retaliatory actions against the plaintiffs and

5

denies remedying their grievances, it has officially approved of the retaliatory actions. *See Koch-Weser*, 1999 WL 519065, 7 (N.D. Ill. 1999); *See also Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Cir. 1988) (improper conduct by police officers known about by the department was sufficient to create department custom and impose supervisor liability). Therefore, the plaintiffs properly allege that the Board of Education, with final policymaking authority, caused their constitutional injury, and through a pattern of such behavior it became policy or custom to retaliate against the plaintiffs.

The court finds that these allegations sufficiently support the plaintiffs' official policy or custom claim against the Board of Education. In the present case, the Board of Education was aware of the complaints and did nothing to remedy the situation. In fact it is alleged that the Board actively engaged in the retaliatory actions against Debbie Andrekus and Deborah VanZuidam. Accordingly, the court finds the Board of Education to be a person within the meaning of 42 U.S.C. § 1983 and subject to liability under the *Monell* test.

**Preemption Over Claims Through the Illinois Educational Labor Relations Act**

Defendants argue that the Illinois Educational Labor Relations Act (IELRA) preempts all claims made by the plaintiffs because the court will need to interpret the governing teacher contract in order to determine the issues. However, the IELRA was designed to create an alternative system from the courts to resolve *labor disputes*, not to eliminate causes of action for constitutional violations. *Jones v. Harris*, 1989 WL 24132, 6 (N.D. Ill. 1989) (emphasis added). Parallel to other acts, the IELRA has been held to be preemptive in its focal area and the Illinois Labor Relations Board has exclusive

6

jurisdiction over the same focal area, labor disputes. *Id.*

Although the actions complained of, in part, touch on the collective bargaining agreement and one of the many alleged retaliatory actions took place in the context of a grievance hearing, as a whole this action concerns repeated violations of the constitutional rights of the plaintiffs. The incident is simply used as one of many examples of alleged retaliatory conduct on the part of the defendants. Many other alleged incidents of misconduct completely independent of the grievance hearing are sufficient to place these claims outside the scope of the IELRA. As such, the IELRA does not preempt federal claims for constitutional violations by the defendants in this case.

## Inclusion of Deborah VanZuidam as a Plaintiff

The defendants argue that since the complaining letter to the ISBE was authored solely by Debbie Andrekus and nowhere mentions Deborah VanZuidam by name as a complaining party that VanZuidam cannot use the letter to substantiate her claims. The court, in deciding a motion to dismiss takes all facts alleged as true and is only testing the sufficiency of the complaint not the merits of the case.

In paragraphs 13-15, 17, 18, 20-22 of the complaint the plaintiffs allege that both Andrekus and VanZuidam were making the complaints to the ISBE. Additionally, the letter to the ISBE is authored from a plural standpoint. It contains language concerning "ED/BD self contained students" generally, a meeting between "Behavior Disorder Teachers", a conversation between Mr. Hain and "teachers", and several other examples. These allegations and the language of the letter sent to the ISBE clearly allege that both

7

Andrekus and VanZuidam complained of constitutional violations by the defendants. As such, it is of no consequence that the letter to the ISBE was authored by only one of the plaintiffs; both may proceed as plaintiffs in this action.

## § 1983 First Amendment Claim

In Count I of the complaint, plaintiffs allege that the defendants violated their First Amendment rights when they retaliated against them for making various complaints concerning violations of special education class size and teaching assignments that were in non-compliance with state law, producing a negative effect on special education students and teachers. To state a claim for retaliation under 42 U.S.C. § 1983 and the First Amendment, the plaintiffs must allege that they were engaged in constitutionally protected speech, that retaliation having a materially adverse employment action occurred, and the plaintiffs complaints were a substantial motivating factor in the adverse employment action. *Pickering v. Board of Education*, 391 U.S. 563 (1968); *DeGuiseppe v. Vilalge of Bellwood*, 68 F.3d 187 (7th Cir. 1995).

Defendants first argue that the speech in question, numerous complaints to supervisors, the teachers union and the ISBE concerning education standards, was not constitutionally protected. In order for speech to be protected, it must address a matter of public concern as determined by the content, context, and form of the statements. *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Gonzales v. City of Chicago*, 239 F.3d 939, 940 (7th Cir. 2001). Defendants assert that the speech in question was voiced in personal terms and of a purely personal nature, not of public concern. Plaintiffs, however, argue that the speech engaged in was of a public concern and is protected by the First

8

Amendment. For the reasons set forth below, the court finds the plaintiffs allege speech that was a matter of public concern.

In *Cliff v. Board of School Commissioners of the City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994), the Seventh Circuit concluded that a teacher's complaints concerning her own class size and lacking student discipline were not matters of public concern. Although the speech engaged in by Andrekus and VanZuidam concerned the same topics, it addressed them in a vastly different manner. The letter to the ISBE and other complaints about class size and teacher scheduling were in the context of harm to disabled students, not personal complaints. The overriding purpose for the letter was of public concern, the educational disadvantages being placed on special education students at Streamwood High School, not of their tangential personal difficulties. *See Colburn v. Trustees of Indiana University*, 973 F.2d 581, 587 (7th Cir. 1992). A fair reading of the letter sent to the ISBE clearly demonstrates this purpose. The letter began by stating that is was being written on behalf of the ED/BD students at Streamwood High School for non-compliance with state guidelines. The letter went on to discuss class size and availability of special education teachers to reduce the illegal class sizes, knowledge of the illegalities and a lack of corrective action. Finally, and importantly, the letter detailed the adverse educational impact these illegalities were having on students such as trouble grasping concepts due to scarce personal attention. From our reading of the letter, we conclude there is no doubt that the plaintiffs' speech addressed a matter of public concern.

Defendants next argue that the retaliatory actions were mere trivial grievances, not rising to the level of adverse employment actions. In order to have a materially

adverse consequence, the conduct must be more than a simple inconvenience or alteration of responsibilities. *DeGuiseppe*, 68 F.3d at 192. The Supreme Court has held a wide variety of conduct that may constitute adverse job actions; including a refusal to hire, refusal to promote, demotions, reduction in pay, or reprimands. *Rutan v. Republican Party*, 497 U.S. 62, 74 (1990). Simple allegations of inflexible scheduling, heavier work assignments, or having to work in constant fear of retaliation are sufficient to withstand a motion to dismiss. *Utomi v. Cook County*, 1999 WL 787480, 2 (N.D. Ill. 1999). For the reasons set forth below, the court finds the defendants' conduct had an adverse employment effect.

The retaliatory conduct in question was substantial and had a clear adverse effect on the two complaining teachers. Employing students to spy on the teachers, making false and disparaging remarks to other teachers, false accusations of improper absence procedures, removing the teachers from special education cases, canceling necessary aspects of IEP programs, and not giving notice of important meetings all had adverse effects on teaching ability and the individual reputations of these two teachers. Additionally, scheduling two certified special education teachers to supervise the cafeteria during several consecutive lunch periods was more than a simple shift in responsibilities; practically, it served as a demotion from certified educator to lunchroom monitor. The plaintiffs have pled sufficient facts to constitute adverse employment actions on the part of the defendants.

Finally, defendants argue that the letter to the ISBE could not be the substantial motivating factor in the actions, due to the occurrence of several of the incidents prior to the letter being sent. This argument takes a much too narrow view of the circumstances

10

of the complaints. The plaintiffs made several complaints prior to the letter of September 26, 2001. These included a grievance with the Union concerning teacher scheduling and resulting educational deficiencies for special education students. The retaliatory conduct began as a result of these initial complaints and was heightened after the letter of September 26. Paragraphs 21 and 22 of the complaint allege that the following conduct was a result of the plaintiffs' complaints concerning the violation of standards in special education classrooms. The complaints made by the plaintiffs were a substantial motivating factor in the retaliatory conduct engaged in by the defendants. Therefore, the court denies the defendants motion to dismiss Count I alleging First Amendment violations under 42 U.S.C. § 1983.

### § 1983 Equal Protection Claim

In Count II, the plaintiffs allege that the defendants treated the plaintiffs differently than other similarly situated teachers in the district. Three categories of Equal Protection claims exist: (1) the singling out members of a vulnerable group for unequal treatment, (2) a law or policy that makes irrational distinctions, and (3) a powerful public official that singles out a person out of sheer vindictiveness. *Esmail v. Mccrane*, 53, F.3d 176, 178 (7th Cir. 1995); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under *Olech*, there must also be no rational basis for the distinction made. *Id.* For a class of one equal protection claim, the plaintiff must allege that he or she was intentionally and vindictively treated differently than other similarly situated individuals and that there is no rational basis for the distinction. *Id.*

11

Plaintiffs' complaint, paragraph 27, clearly alleges that Andrekus and VanZuidam were treated differently from other similarly situated teachers. Paragraph 29 of the complaint unequivocally alleges that the defendants' actions were motivated by ill will and vindictiveness. Defendants argue that this claim trivializes the Equal Protection doctrine and should not be allowed. Defendants argue that Equal Protection is trivialized when used to scrutinize every decision made by the state and local government. For the reasons set forth below, the court finds the actions of the defendants more than trivial actions, but material unequal treatment motivated by vindictiveness.

The complaint alleges factual circumstances to support allegations of vindictive different treatment. The lengthy list of alleged retaliatory behavior listed in paragraph 21 of the complaint demonstrates disparaging treatment directed only at the plaintiffs. The nature of the actions and timing of such actions in relation to plaintiffs' complaints of alleged violations lead to an unmistakable conclusion that vindictiveness was the motive behind the retaliatory actions. The court finds that the plaintiffs adequately allege unequal treatment and a vindictive motive necessary to constitute an Equal Protection claim.

Defendants finally argue that the claim must fail due to an existing rational basis for the distinctions made by the defendants. Under a rational basis review, the court presumes that the challenged governmental action is constitutional; thus, the plaintiff must allege facts sufficient to overcome the presumption of rationality. *Wroblewski v. City of Washburn*, 965 F.2d 452, 458 (7th Cir. 1992). For the reasons set forth below, the court finds that the conduct engaged in by the defendants, as alleged by the plaintiffs, has no rational basis.

The only rational basis brought forth for any of the defenses' actions was that the scheduling of two lunch supervisory periods and three teaching periods was the result of the grievance hearing. It is alleged that the action taken at the grievance hearing was one of many retaliatory actions, wrought with unfairness, though. The decision of the grievance hearing may supply a rational basis for one of the actions of the defendants, but paragraph 21 of the complaint alleges ten separate retaliatory actions. The majority, if not all, of these alleged actions have no rational relation to any legitimate state interest and, as alleged, were purely motivated by ill-will and vindictiveness. The court cannot find at this time that the alleged retaliatory actions engaged in by the defendants have a rational basis. Therefore, the court denies the defendants motion to dismiss Count II alleging Equal Protection violations under 42 U.S.C. § 1983.

### Conspiracy Claims

Counts III and IV alleging a conspiracy under 42 U.S.C. § 1985 and failure to prevent a conspiracy under 42 U.S.C. § 1986 are dismissed without prejudice.

### Intentional Inflection of Emotional Distress Claim

Defendants correctly argue that if all other claims in this case are dismissed, there is no jurisdiction over the Illinois state tort intentional infliction of emotional distress under 28 U.S.C. § 1367 and the claim should be dismissed under Federal Rule of Civil Procedure 12(b)(1). Since the motion to dismiss has been denied as to the First and Fourteenth Amendment claims, and the Illinois state law intentional infliction of emotional distress claim arises out of the same nucleus of operative facts, the United

13

States District Court for the Northern District of Illinois may exert supplemental jurisdiction over the claim.

The defense next argues that the Workers Compensation Act bars a claim for intentional infliction of emotional distress. Under *Collier v. Wagner Castings Co.*, 408 N.E.2d 198, 202 (1980), a case incorrectly cited by the defendant, the Act is not applicable if the injury was intentional. The allegations in this case are of intentional conduct on the part of the defendants in retaliation for bringing violations to the attention of the ISBE. Therefore, the Act does not bar the pending claim.

The Illinois Supreme Court clearly delineated the necessary elements to establish a cause of action for an intentional infliction of emotional distress claim in *Public Finance Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976). First, the conduct of the defendant must be of an extreme and outrageous nature, beyond all bounds of decency. *Id.* Next, the distress must be so severe that no man should be expected to endure it. *Id.* Defendants argue that plaintiffs have failed to allege facts which establish conduct rising to the level of extreme and outrageous.

In *Davis*, the court dismissed the complaint when the conduct complained of consisted of harassing phone calls and harsh and abusive language. Also in *Wainwright v. Doria*, 1994 WL 178347 (N.D. Ill. 1994), the court dismissed an intentional infliction of emotional distress claim where there were no threats made, acts of violence, racial slurs, or acts calculated to terrorize or demean the plaintiff. There were also no supporting factual allegations of psychiatric or emotional damage. *Id.*

The conduct alleged in the plaintiffs complaint does not amount to the outrageous and extreme conduct required to sustain a claim for intentional infliction of emotional

14

distress. The allegations on paragraph 21 of the complaint do not go beyond the bounds of decency. They do describe retaliatory conduct, but not conduct of a nature to shock the conscience. Allegations such as unfair scheduling, an unfair grievance hearing, and removal from special education cases do not rise to such an extreme and outrageous nature. Also, the plaintiffs do not state factual allegations of resulting severe emotional or psychiatric distress. Plaintiffs must allege such extreme and outrageous conduct with factual allegations of resulting harm in order to withstand a motion to dismiss. The facts alleged and bare legal conclusions are insufficient in this case. Therefore, the intentional infliction of emotional distress claim fails to state a cause of action and is dismissed without prejudice.

## CONCLUSION

For the reasons listed above, defendants' motion to dismiss the plaintiffs' complaint is granted as to Counts III, IV, and V and denied without prejudice as to Counts I and II (#5 -1).

SO ORDERED

ENTERED: 3-18-03

HON. RONALD A. GUZMAN
United States Judge

15