

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3960 | **DATE** | 9/27/2004 |
| **CASE TITLE** | Debbie Andrekus, et al. vs. Board of Education of District U-46, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants' motion for summary judgment [22-1] is granted and defendants' motion in limine [27-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 2 8 2004 | |
| | Notified counsel by telephone. | date docketed | 43 |
| | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | 9/27/2004 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| | IS | courtroom deputy's initials | IS |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DEBBIE ANDREKUS** and **DEBORAH VANZUIDAM,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 02 C 3960 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **BOARD OF EDUCATION OF DISTRICT U-46**, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
SEP 28 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Debbie Andrekus and Deborah VanZuidam filed a five-count complaint against Defendants Board of Education District U-46, Marvin Edwards, Richard P. Majka, Maria Smith, Ron Kalicki, Robert Hain and Diane McFarlin. Counts III, IV, and V of Plaintiffs' Complaint were previously dismissed and Defendants now move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment and dismiss Plaintiffs' Counts I and II. This case is properly before this Court as Count I of Plaintiffs' Complaint alleges a First Amendment violation under 42 U.S.C. § 1983, Count II alleges an Equal Protection violation under 42 U.S.C. § 1983, and both parties consent to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a).

The Defendants complied with Local Rule 56.1 and submitted a Local Rule 56.1 Statement of Undisputed Material Facts ("L.R. 56.1 Statement") in support of their Motion for Summary Judgment. The Plaintiffs did not file a Local Rule 56.1 Statement of Undisputed

Material Facts so the Court deems Defendants' entire L.R. 56.1 Statement to be admitted by the

Plaintiffs. L.R. 56.1(b)(3)(B). *See also Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th

Cir. 1995) (opposing party cannot simply raise additional facts in its brief if those facts are not in

its 56.1(b)(3)(B) statement).

## I.  **Background**

Plaintiffs Debbie Andrekus and Deborah VanZuidam, at the time of filing, were both

certified, tenured teachers employed at Streamwood High School, in the Village of Streamwood,

Cook County, Illinois by School District U-46. The District is organized and operated pursuant

to the Illinois School Code and as such the Board of Education was charged with the duty of

running the District pursuant to the Illinois School Code. On June 4, 2002, Plaintiffs filed their

Complaint against Defendants; Marvin Edwards, Superintendent of the District, Richard Majka,

Assistant Superintendent of the District, Maria Smith, Director of Special Education for District

U-46, Ron Kalicki, Principal of Streamwood High School, Robert Hain, Special Education

Supervisor for Streamwood High School, Diane McFarlin, Dean of Streamwood's Special

Education Department, and the Board of Education.

At all pertinent times, Andrekus was a special education teacher whose duties included

classroom instruction for Behavior Disorder ("BD") students in a self-contained classroom and

acting as a case manager for up to thirteen BD students. During the 2001-2002 school year,

VanZuidam was assigned to teach Educable Mentally Handicapped (EMH) students in a self-

contained classroom and served as a case manager for up to fifteen EMH students. At all

pertinent times, Andrekus and VanZuidam were represented for purposes of collective bargaining

by the Elgin Teachers Association ("Union"). The Union is party to a collective bargaining agreement ("Union Contract") which sets forth the terms and conditions of employment for teachers, including the terms for teacher evaluations and the resolution of disputes arising out of the Union Contract. Among other things, the Union Contract permits administrators to schedule up to three classroom observations during a tenured teacher's evaluation and provides that disputes over alleged Union Contract violations shall be resolved through a four-step grievance procedure that culminates in arbitration.

In May 2001, Streamwood High School's special education teachers were required to adjust their schedules in response to changes in special education required by *Corey H. v. Bd. of Educ. of Chicago*, 995 F. Supp. 900 (N.D. Ill. 1998) (altering the manner in which special education students in Illinois receive classroom instruction) and to accommodate construction and remodeling at the high school. Prior to the 2001-2002 school year, both Plaintiffs taught five classes from 7:30 a.m. to 12:10 p.m. with the remainder of their days allocated to lunch, supervision, and planning periods. The new schedule, to take effect in the 2001-2002 school year, required the Plaintiffs to teach five academic subjects throughout the day plus one supervisory period, one planning period, and one lunch period. Andrekus and VanZuidam believed that the Fall 2001 schedules violated their Union Contract and on June 1, 2001, they initiated a Union grievance challenging the schedules. On August 23, 2001, the School District agreed to reduce Andrekus's and VanZuidam's assignments to three classes and two supervision periods each. As a result of this resolution, the Defendants were required to retain a teacher to fill in for the classes Andrekus and VanZuidam no longer taught.

In addition to changing schedules and classroom assignments, in the Fall of 2001, Streamwood's Special Education Department hired a new dean, Diane McFarlin. McFarlin's responsibilities included implementing student discipline when students misbehaved and setting certain policies for the Special Education Department. In one of her first decisions as dean, on September 5, 2001, McFarlin issued a memo to Andrekus and VanZuidam placing special education teachers' off-campus activities on hold until further notice. On October 9, 2001, McFarlin notified special education teachers that they could resume their field trips.

On September 26, 2001, Andrekus sent a letter to the Illinois State Board of Education ("ISBE"). The September 26, 2001 letter purported to speak on behalf of all Emotional Disturbance/Behavioral Disorder ("ED/BD") staff and students and alleged that Streamwood High School was deliberately not complying with state guidelines limiting special education class sizes. The letter also described the difficulties that students and teachers were having due to the Department's new schedules, room assignments and policies. On the signature line of that letter Andrekus wrote "The Special Education Teachers at SHS" and then listed nine teachers by name whom the ISBE could contact if it had further questions. The list of nine teachers included Andrekus and VanZuidam. Andrekus did not obtain permission from Streamwood's special education teachers to attribute the letter to them nor did she present the letter to the teachers before forwarding it to the ISBE. When the other special education teachers learned of Andrekus's actions they sent a retraction letter to the ISBE stating that they had not authorized the use of their names on the September 26, 2001 letter. The retraction letter was signed by all of the teachers listed by name on the September 26, 2001 letter, except for Andrekus and VanZuidam.

After learning about the retraction letter, Andrekus sent a second letter to the ISBE on October 2, 2001 ("ISBE letter"). The October 2, 2001 letter was identical to the September 26, 2001 letter except that it was signed only by Andrekus. At some point after the ISBE letter was sent, VanZuidam had a private telephone conversation with Donna Schertz, an employee of the ISBE. Later in October 2001, the ISBE notified Defendant Smith that a complaint had been filed and ultimately sent Defendants Smith and Edwards a copy of the ISBE letter, which contained only Andrekus's signature. All ISBE correspondence received by Smith and Edwards subsequent to the initial complaint referred to Andrekus and not VanZuidam. (Defs.' L.R. 56.1 Statement ¶ 53.)

The Plaintiffs allege that the Defendants systematically retaliated against them after they learned of the complaints to the ISBE. On about three occasions during the 2001-2002 school year substitute teachers were not retained to cover Andrekus's pre-approved absences or her attendance at the individual education plan meetings ("IEP meetings") of students for whom she was a case manager. On two or three other occasions, Andrekus did not receive the ten days advance notice of an IEP meeting to which she believed she was entitled. On two occasions Andrekus's teaching assistant taught her class while she attended an IEP meeting. Over the course of the 2001-2002 school year, Andrekus was removed as case manager for three students at their parents's request. Also that year, there were instances when McFarlin did not take final disciplinary action when Andrekus and VanZuidam referred students for discipline. Andrekus and VanZuidam were both scheduled to receive the maximum number of classroom observations (three) permitted by their Union Contract in the 2002-2003 school year. And finally, before the

start of the 2002-2003 school year, VanZuidam was assigned to teach the Computer Application

Programs for Special Education Students ("CAPSE") course.

Upset with the Streamwood High School and Special Education Department, the

Plaintiffs filed grievances in February and April of 2002. In accordance with their Union

Contract, a level III grievance hearing was scheduled before the Board of Education for May 13,

2002. Against the Plaintiffs' protestations, the Board of Education allowed Defendants Hain and

McFarlin to attend the grievance hearing. On June 4, 2002, the Plaintiffs filed their five-count

Complaint against the Defendants. On September 24, 2002, the Plaintiffs filed an unfair labor

practice charge with the Illinois Educational Labor Relations Board ("IELRB") objecting, among

other things, to the Board of Education's conduct at the May 13, 2002 grievance hearing.

On March 20, 2003, District Judge Guzman dismissed Counts III, IV and V of the

Plaintiffs' Complaint.[1] On August 5, 2003, the IELRB dismissed the Plaintiffs' unfair labor

practice charge for lack of evidence. (Id. ¶ 79.) Defendants now move this court to grant

summary judgment and dismiss Plaintiffs' remaining Counts I and II.


## II.    Discussion

Defendants filed a Motion for Summary Judgment claiming that there are no genuine

issues of material fact regarding Plaintiffs' Count I allegations of First Amendment retaliation or

Plaintiffs' Count II allegations of Equal Protection violations.

Summary judgment is appropriate when the record shows "that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

[1] *Andrekus v. Bd. of Educ.*, No. 02 C 3960, 2003 WL 1475033 (N.D. Ill. Mar. 20, 2003).

Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt., Ltd.*, 209 F.3d 678, 683 (7th Cir. 2000). In determining whether summary judgment is appropriate, the Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). However, if the nonmovant bears the burden of proof on an issue she may not simply rest on the pleadings, but rather must affirmatively set forth specific facts establishing the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-26.

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. If taking the record in its entirety cannot lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial and summary judgment must be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.      Count I - First Amendment Retaliation

In Count I of their Complaint, Plaintiffs allege that Defendants violated their First Amendment rights when Defendants retaliated against them for sending the ISBE letter complaining about conditions in Streamwood High School's special education program. A plaintiff alleging retaliation under 42 U.S.C. § 1983 and the First Amendment must show that her speech was (1) constitutionally protected and (2) a substantial or motivating factor in the retaliatory action. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). In the case of public

employees, courts use the *Connick-Pickering* test to determine if the speech is constitutionally protected. Under the *Connick-Pickering* test the speech must be a matter of public concern and the employee-citizen's interest in commenting on the matter must outweigh the employer-government's interest in promoting effective and efficient public service. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Spiegla*, 371 F.3d at 940. To establish that speech was a substantial or motivating factor in the retaliatory action the plaintiff must show that the protected speech caused, or at least played a substantial part in, the employer's decision to take adverse employment action against her. *Spiegla*, 371 F.3d at 942. An adverse employment action is any action taken under color of law that creates the potential for chilling an employee's speech on matters of public concern. *Power v. Summers*, 226 F.3d 815, 820-21 (7th Cir. 2000); *DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995). While the adverse action need not be monstrous, it must be more than a mere inconvenience and the employee must be made worse off by it. *DeGuiseppe*, 68 F.3d at 192. Finally, even if the plaintiff satisfies her two-part test, the defendant must have the opportunity to show that she would have taken the same actions even in the absence of the protected speech. *See Spiegla*, 371 F.3d at 935; *Sandoval v. Calumet Pub. Sch. Dist. No. 132*, 2004 WL 1588276, at *10 (N.D. Ill. July 15, 2004).

### 1.   Speech Must Be A Matter of Public Concern

The Defendants argue that the ISBE letter upon which Plaintiffs base their First Amendment retaliation claim is not constitutionally protected speech because it represents the private grievances of an individual employee and is not a matter of public concern.

To be constitutionally protected, a public employee's speech must be a matter of public concern. *See Connick*, 461 U.S. at 147-48. Whether a matter is of public concern depends on the content, form and context of a given statement. *Id.*; *Belk v. Town of Minocqua*, 858 F.2d 1258, 1264 (7th Cir. 1988). A statement is of public concern when it relates to a matter of political, social or other concern to the community, rather than merely a personal grievance of interest only to the employee. *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002). Thus, a speaker's motive "may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected." *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994); *Colburn v. Trs. of Indiana Univ.*, 973 F.2d 581, 586-87 (7th Cir. 1992). Motive, however, is not assessed in a vacuum. Courts recognize that people often speak out for personal reasons and that speech may be of public concern even where the speaker stands to gain a personal benefit in addition to bringing the wrongdoing to light. *See Belk*, 858 F.2d at 1264; *Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990).

The ISBE letter was more than "a disgruntled employee's complaint regarding [a] . . . previously resolved scheduling grievance." (Defs.' Mem. Supp. Mot. Summ. J. at 5.) The ISBE letter does recount individual scheduling grievances that existed at the beginning of the 2001-2002 school year. However, the letter also alleges that Streamwood was not complying with state guidelines limiting special education class sizes, describes the difficulty of teaching and learning in classrooms with too many or too few students, and draws attention to student complaints about not grasping class material due to insufficient access to teachers. In *Cliff v. Bd. of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 410-11 (7th Cir. 1994), a teacher's letter

complaining about class sizes and student discipline was dismissed as a personal grievance and not of public concern because the teacher did not purport to speak for other teachers and it was clear that she was merely responding to complaints about her ability to control her own classroom. Unlike *Cliff*, Andrekus did purport to speak for the entire Special Education Department and she did not limit her discussion to her own grievances. The ISBE letter may have been motivated by Andrekus's displeasure with her new schedule but it explicitly addresses institutional failings at Streamwood and describes the frustrations of staff and students. Because the content of the ISBE letter was clearly of concern to the Streamwood community, the Court finds that the ISBE letter is a matter of public concern.

The Defendants do not claim that the government's interest in maintaining efficient and effective operations outweighs the Plaintiffs' interest in commenting on the subject matter in the ISBE letter and the Court finds that it does not. Accordingly, the speech upon which the Plaintiffs base their First Amendment retaliation claim and their Equal Protection claim is constitutionally protected speech.

2.  Speech Must Be Substantial or Motivating Factor in
    the Retaliatory Action

The Defendants claim that the Plaintiffs cannot establish that their protected speech caused, or at least played a substantial part in, the Defendants' decision to take adverse employment action against them.

### a. VanZuidam

As an initial matter, the Defendants assert that VanZuidam's claims must fail because they did not even know that she had exercised her right to free speech. "Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999-1000 (7th Cir. 1999) (internal quotations omitted). VanZuidam bases her First Amendment and Equal Protection claims on the October 2, 2001 ISBE letter and on a telephone conversation that she had with Donna Schertz shortly thereafter. (Defs.' L.R. 56.1 Statement ¶¶ 50-51.) VanZuidam admits, however, that only Andrekus's name appears on the ISBE letter and it was a copy of that letter that was forwarded to Defendants Edwards and Smith. (Id. ¶¶ 50, 52-53.) VanZuidam admits that all of the ISBE correspondence received by Edwards and Smith subsequent to the initial complaint referred to Andrekus, not VanZuidam. (Id. ¶ 53.) And VanZuidam also admits that her telephone conversation with Donna Schertz was made from her home and was not discussed with the Defendants. (Id. ¶ 51.) Thus, VanZuidam has no evidence that Defendants knew of any exercise of free speech by her.[2]

---

[2] In denying Defendants' motion to dismiss VanZuidam's claims, District Judge Guzman looked to the ISBE letter as well as VanZuidam's actions prior to the letter. *See Andrekus*, 2003 WL 1475033, at *4. VanZuidam clearly exercised her right to free speech prior to the ISBE letter, but, by failing to respond to Defendants' L.R. 56.1 Statement, VanZuidam admitted that she bases her claims on the ISBE letter and the telephone conversation with Schertz and excluded earlier incidents. Accordingly, VanZuidam stands in a very different place today than she did when Defendants previously moved to dismiss her claim. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (only grant motion to dismiss when it appears beyond a doubt that plaintiff can prove no set of facts to support the allegations in her claim); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (at motion to dismiss, ambiguities in complaint must be construed in favor of plaintiff).

At summary judgment, a plaintiff may no longer simply rest on her pleadings. VanZuidam does precisely that in her Response to Defendants' Motion for Summary Judgment.[3] The Plaintiffs allege numerous times that VanZuidam co-authored the ISBE letter but they present no evidence of that collaboration. VanZuidam did not sign the ISBE letter, nor is her name even mentioned in the letter. The Plaintiffs claim that VanZuidam is easily identifiable by the content of the letter but, as noted above, the ISBE letter purports to speak on behalf of all ED/BD and special education staff and students and, in that context, any specific incidents involving VanZuidam can only be viewed as one item in a laundry list of department-wide grievances. Furthermore, the fact that VanZuidam did not sign her name to the special education teachers' retraction letter is not proof of authorship of the ISBE letter, nor does that fact provide any notice to Defendants of her authorship. Assuming that the Defendants even saw or compared both the ISBE letter and the teachers' retraction letter, VanZuidam's decision not to oppose Andrekus's letter could be interpreted as indifference to the letter writing campaigns. But even if VanZuidam's decision not to oppose Andrekus was interpreted as support for Andrekus's complaints, merely supporting someone who exercises her freedom of speech is not the same as exercising one's own rights.

The issue before the Court is not whether the Defendants had reason to believe that VanZuidam shared Andrekus's displeasure with school policies. The issue before the Court is whether VanZuidam was targeted because she exercised her First Amendment rights.

---

[3] Page four of Plaintiffs' Response to Defendants' Motion for Summary Judgment reads, "Plaintiffs' complaint alleges that both plaintiffs made numerous complaints to the administration prior to the letter (#13). The complaint also alleges that Andrekus wrote the letter on her and VanZuidam's behalf. (#14). Defendants' Answer denied these allegations. That creates a question of fact in and of itself." (Pls.' Resp. Defs.' Mot. Summ. J. at 4.)

VanZuidam presents no evidence suggesting that she exercised her right to free speech, so the Court finds that she cannot establish that Defendants violated her First Amendment rights by retaliating against her.

### b. Adverse Employment Actions

In their Complaint, the Plaintiffs accuse the Defendants of orchestrating a campaign of retaliation and harassment which included:

- assigning Plaintiffs to two consecutive lunch supervisory periods when no other teacher in the High School had more than one;

- soliciting students to spy on the Plaintiffs and write reports to Hain and/or McFarlin;

- hiring a non-certified substitute teacher to teach Plaintiffs' special education classes while Plaintiffs were assigned three supervisory periods;

- failing to obtain substitute teachers and falsely accusing Plaintiffs of failing to give the school proper notice of their absences;

- failing to properly record all of the student disciplinary referrals written by Plaintiffs;

- failing to honor Plaintiffs' grievances rights as guaranteed by the Union Contract, namely allowing Hain and McFarlin to attend a level III Grievance Hearing on May 13, 2002;

- making untrue disparaging remarks about Plaintiffs to other faculty

members and parents;

- cancelling previously approved class field trips that were a part of students' IEP and/or behavior management plans at the last moment without notice;

- unilaterally removing Plaintiffs as special education case managers without notice;

- failing to notify Plaintiffs of IEP meetings until the last moment thereby depriving Plaintiffs of opportunity to adequately prepare for meetings.

The Plaintiffs also complain that VanZuidam was forced to teach the CAPSE course in the 2002-2003 school year and that Andrekus and VanZuidam were both scheduled for three classroom observations for the 2002-2003 school year.

Not all of the Plaintiffs' allegations are relevant to their First Amendment and Equal Protection claims.

### i. Actions taken before September 26, 2001

Evidence which predates September 26, 2001, is irrelevant to the Plaintiffs' allegations of retaliation and unequal treatment because the Plaintiffs' constitutionally protected speech occurred on, or later than, September 26, 2001.

To establish First Amendment retaliation, a plaintiff must show that she engaged in constitutionally protected speech and that that speech was a substantial or motivating factor in the defendant's retaliatory action. *Spiegla*, 371 F.3d at 935. By definition, the defendant's

retaliatory actions must be in response to, i.e., follow, the plaintiff's exercise of her constitutional rights. In this case, the earliest speech that either Plaintiff relies on in bringing her First Amendment and Equal Protection claims is the ISBE letter sent on October 2, 2001, which was identical in content (except for the attribution of authorship) to the September 26, 2001 ISBE letter. (Defs.' L.R. 56.1 Statement ¶ 50.) Because neither Plaintiff bases her claims on protected speech made before September 26, 2001, the Court finds that actions taken by the Defendants before September 26, 2001, cannot constitute evidence of retaliation in this case. *See* Fed. R. Evid. 402 (irrelevant evidence not admissible at trial); *Scott v. Edinburg*, 346, F.3d 752, 759-60 n. 7 (7th Cir. 2003) (evidence that is not admissible at trial is not admissible at summary judgment). Specifically, the following allegations cannot be evidence of retaliation: (1) assigning Plaintiffs to two consecutive lunch supervisory periods when no other teacher in the High School had more than one (occurred on August 23, 2001); (2) cancelling previously approved class field trips that were a part of students' IEP and/or behavior management plans at the last moment without notice (occurred on September 5, 2001); and (3) hiring a non-certified substitute teacher to teach Plaintiffs' special education classes while Plaintiffs were assigned three supervisory periods (occurred in early September 2001).

      ii.    <u>After May 1, 2002</u>

    Defendants argue that, as a matter of law, events occurring after May 1, 2002, cannot support the Plaintiffs' claims of retaliation because they are too far removed from the Plaintiffs' protected speech. Specifically, Defendants move the Court to exclude evidence that: (1) Defendants violated Plaintiffs' rights under the Union Contract by allowing Hain and McFarlin to

attend the Plaintiffs' level III grievance hearing on May 13, 2002; (2) Defendant Hain scheduled three classroom observations of Plaintiffs during the 2002-2003 school year; and (3) Defendants assigned VanZuidam to teach the CAPSE course during the 2002-2003 school year.

When analyzing a retaliation claim, the Seventh Circuit finds that sufficient passage of time may destroy an inference of causation. Defendants seek to apply this rule to our case and cite to *Wallscetti v. Fox*, 258 F.3d 662 (7th Cir. 2001), *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390 (7th Cir. 1999), and *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992). In the cited cases, the Seventh Circuit found that a four month gap between protected speech and an adverse employment action "without more" is too long to support a reasonable inference of causation. *Wallscetti*, 258 F.3d at 669. *See also Filipovic* 176 F.3d at 398-99 (without more evidence of retaliation, four months between complaint to EEOC and termination from job is too much time to show causation); *Hughes*, 976 F.2d at 1174 (disciplinary letter received four months after filing sex discrimination claims against employer does not sufficiently raise inference of causation). Unlike the plaintiffs in *Wallscetti*, *Filipovic*, and *Hughes*, Andrekus and VanZuidam base their claims on alleged retaliatory actions taken throughout the 2001-2002 school year. The record contains evidence suggesting that: (1) in October 2001 Andrekus was removed as case manager for two students, (2) on at least two or three occasions during the 2001-2002 school year Andrekus did not receive advance notice of an IEP meeting; (3) about three times during the 2001-2002 school year substitute teachers were not retained to cover Andrekus's pre-approved absences; (4) twice during the year a substitute was not obtained for Andrekus while she left her class and her lunch/supervision period to attend special education IEP meetings; and (5) on several occasions Andrekus recommended students for discipline but McFarlin did not list the

students in her log. This evidence connects the protected speech at the beginning of the 2001-2002 school year (i.e., the ISBE letter) with events at the end of the 2001-2002 school year (i.e., the level III grievance hearing in May 2002 and the preliminary 2002-2003 school year schedule). Because there are no significant, unexplained gaps in this case, evidence of retaliation after May 1, 2002, is relevant to Plaintiffs' claims.

### iii.   Hearsay

Only evidence that is admissible at trial may be considered at summary judgment. *See Scott*, 346 F.3d at 759-60 n. 7. Hearsay evidence that is inadmissible at trial, therefore, is also inadmissible at summary judgment. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). However, because summary judgment is not the actual trial itself, evidence that is hearsay in form but not in content, e.g., a sworn affidavit from a witness who is prepared to give otherwise admissible testimony at a trial, is admissible at summary judgment. Fed. R. Civ. P. 56(e); *Eisenstadt*, 113 F.3d at 742.

Plaintiffs rely on inadmissible hearsay when they accuse the Defendants of soliciting student spies and making disparaging remarks about the Plaintiffs. First, Plaintiffs rely on a handwritten note by a student to show that he was solicited by McFarlin to spy on Andrekus. The note is hearsay as it is offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Because the declarant is alive and available to testify, and because none of the exceptions under Fed. R. Evid. 803 apply, the note is only admissible at trial if it falls under the Fed. R. Evid. 807 residual exception. Rule 807 requires that the note (1) has circumstantial guarantees of trustworthiness equivalent to the other hearsay exceptions; (2) is offered as evidence of a material

fact; (3) is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts; and (4) serves the interests of justice. Fed. R. Evid. 807; *Eisenstadt*, 113 F.3d at 743. Because the author of the note could easily sign an affidavit or be deposed, the note fails this test. *See Eisenstadt*, 113 F.3d at 743 (finding newspaper article to be inadmissible hearsay where plaintiffs did not obtain reporter's affidavit or depose him). Similarly, Plaintiffs' reliance on their own deposition testimony to prove statements made by McFarlin and Hain to other teachers fails this hearsay test. The Plaintiffs do not have first hand knowledge of these statements so their testimony is hearsay. The Plaintiffs could easily obtain affidavits from the teachers with first hand knowledge or depose them but they chose not to. Because neither the student's note nor the Plaintiffs' testimony is admissible at trial, and because the Plaintiffs never argue that it was not feasible to obtain better evidence, both items are excluded at summary judgment. Accordingly, the Court will not consider Plaintiffs' allegations of (1) soliciting students to spy on the Plaintiffs and write reports to Hain and/or McFarlin; or (2) Hain and McFarlin made untrue disparaging remarks about Plaintiffs to other faculty members and parents.

iv.   <u>Preemption</u>

Defendants argue that, under the Illinois Educational Labor Relations Act ("IELRA"), whether Hain and McFarlin's presence at the Plaintiffs' May 13, 2002 grievance hearing constitutes retaliation depends on the IELRB's interpretation of the Plaintiffs' Union Contract. Because the IELRB dismissed the Plaintiffs' unfair labor practice charge on August 5, 2003, Defendants argue that the Plaintiffs are preempted from relying on their May 13, 2002 grievance

hearing as evidence of retaliation in this proceeding. When Defendants previously moved to dismiss all of the Plaintiffs' claims on preemption grounds, District Judge Guzman denied the motion and ruled that, "the IELRA has been held to be preemptive in its focal area and the Illinois Labor Relations Board has exclusive jurisdiction over the same focal area, labor disputes." *Andrekus*, 2003 WL 1475033, at *3. In seeking to exclude this one incident, Defendants now present a more focused and more compelling preemption argument. However, this Court finds that, while the May 13, 2002 grievance hearing might properly be categorized as a labor dispute and Hain and McFarlin's presence at the hearing might not have been a violation of the Union Contract, the fact that the incident occurred at all is relevant to the Plaintiffs' overall retaliation claim. Thus, without passing judgment on the appropriateness of the Defendants' actions, the Court takes note of Hain and McFarlin's presence at the grievance hearing.

v.     Remaining Evidence

Plaintiffs' remaining evidence may constitute adverse employment action. An adverse employment action is any action taken under color of law that might chill an employee's speech on matters of public concern. *Power*, 226 F.3d at 820; *DeGuiseppe*, 68 F.3d at 192. Proof of an adverse employment action requires only a minimal evidentiary showing by the plaintiff. *Power*, 226 F.3d at 820.

The Plaintiffs' remaining complaints concern actions that the Defendants were legally permitted to take. When viewed as a whole, however, the Defendants' removal of Plaintiffs as case managers without notice, scheduling of Plaintiffs for the maximum number of observations permitted under their contract, failure to obtain substitute teachers, failure to record disciplinary

referrals, and presence at Plaintiffs' grievance hearing, could constitute adverse action. Without violating the Union Contract, the Defendants may have undermined Andrekus's ability to work effectively and control her classroom, and, in so doing, Defendants may have chilled free speech at the Streamwood High School. *See id.* at 821 (petty campaign of harassment and minor forms of retaliation can be actionable under the First Amendment). Drawing all reasonable inferences in favor of the nonmoving party, Andrekus presents evidence of adverse employment actions.

### c. Causal Connection

The Plaintiffs must establish a causal connection between the protected speech and the adverse employment actions. *Spiegla*, 371 F.3d at 935. Plaintiffs have produced no evidence connecting any action by the Defendants to the ISBE letter or VanZuidam's telephone conversation with Donna Schertz. Rather, Plaintiffs rely entirely on timing to establish a connection between their protected speech and the adverse employment actions that followed.

In Title VII discrimination suits, suspicious timing does constitute circumstantial, or indirect, evidence to support a claim. *Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997); *Lalvani v. Cook County*, 269 F.3d 785, 790 (7th Cir. 2001). In this case, however, the timing alone is not sufficient to establish retaliation. There is nothing suspicious about the timing of Defendants' occasional failure to obtain substitutes, failure to give extra notice of IEP meetings, or modification of VanZuidam's 2002-2003 schedule. Plaintiffs themselves argue that Streamwood's Special Education Department had serious department-wide problems in the areas of substitute teachers, class

scheduling and class sizes. In June 2001, upset about scheduling and school policies, the

Plaintiffs initiated a union grievance regarding scheduling and staffing changes, and challenged

their Fall 2001 schedules. That grievance was resolved in their favor in August 2001, a month

before the ISBE letter. Plaintiffs continued to complain about schedules and class sizes

throughout August and September 2001. In fact, Andrekus describes several of these incidents in

the ISBE letter itself. That these problems persisted into the 2001-2002 school year and

adversely impacted the Plaintiffs is not suspicious and does not suggest a causal connection to

the ISBE letter.

There is nothing suspicious about scheduling the Plaintiffs for increased numbers of

classroom observations or removing Plaintiffs as case managers. Plaintiffs claim that they had

always received positive performance evaluations prior to the ISBE letter, but admit that several

parents complained about them in the 2001-2002 school year, including specific demands to

remove Andrekus as case manager. (Defs.' L.R. 56.1 Statement ¶¶ 67, 85-86.) Parents's

complaints are not actions taken by the Defendants and do not suggest a causal connection. And

the fact that lower performance evaluations coincided with parent complaints about classroom

teaching is not suspicious.

So, Plaintiffs are essentially left with two complaints: that their referrals for discipline

were not recorded by McFarlin and that their rights were violated by Hain and McFarlin at the

May 13, 2002 grievance hearing. Plaintiffs admit that McFarlin had discretion under state law

not to record referrals and that she chose not to record them on several occasions with several

different teachers. (Id. ¶¶ 42, 71-74.) Plaintiffs allege that prior to May 13, 2002, school

administrators had never been allowed to attend a level III grievance hearing, but offer no

evidence to support that assertion. Furthermore, Plaintiffs admit that they filed additional grievances in February and April of 2002 and offer no evidence that the administrators's presence at the meeting was related to the ISBE letter written eight months earlier. And finally, the Plaintiffs admit that the IELRB dismissed their unfair labor practice charge, which included the May 13, 2002, incident, for lack of evidence. (Id. ¶ 79.)

Plaintiffs fail to present any evidence that their protected speech motivated the Defendants to take adverse employment actions against them. The Plaintiffs rely entirely on timing but fail to address the numerous reasons why the timing in this case is unremarkable. Because there is no genuine issue of material fact, summary judgment is appropriate.

### 3. Defendants' Actions Not Motivated by Protected Conduct

If the Plaintiffs had carried their burden and established that they were retaliated against because of their protected speech, Defendants would still be entitled to summary judgment because they can show that their actions were not motivated by the Plaintiffs' protected speech. *See Spiegla*, 371 F.3d at 935.

Defendants have legitimate explanations for removing Andrekus as a case manager and assigning Plaintiffs the maximum number of classroom observations. Andrekus admits that parents complained about her. (Defs.' L.R. 56.1 Statement ¶ 85.) One parent demanded that Andrekus be removed and a new case manager assigned to her son. Defendants immediately complied with this demand, which explains the lack of notice when Andrekus was removed as a case manager. (Id. ¶ 67.) Two other parents requested male case managers for their sons, so Andrekus was removed from those assignments as well. (Id. ¶ 63.) Both Andrekus and

VanZuidam admit that parents complained about their classroom teaching and that administrators had concerns about their teaching performances, which explains why the two were tentatively scheduled for the maximum number of classroom observations. (Id. ¶¶ 85-86.) This explanation for the classroom observations is supported by the fact that the Defendants ultimately chose not to observe VanZuidam at all during the 2002-2003 school year because she was teaching the CAPSE course for the first time and the Defendants felt she needed more time to acclimate to her new position. (Id. ¶ 87.)

The Defendants explain their failure to obtain substitutes and to give the traditional (though not required) ten days advance notice of IEP meetings. Andrekus admits that at least one of the two or three IEP meetings she missed was an emergency meeting and advance notice was not possible. (Id. ¶ 66.) On two of the occasions when Andrekus needed a substitute because of an IEP meeting the school had Andrekus's teaching assistant run the class. (Id. ¶ 60.) And when Andrekus could not attend an IEP meeting she was permitted to send down her reports and was not reprimanded. (Id. ¶ 59, 69-70.)

While there are one or two unexplained incidents when substitute teachers were not provided, the Plaintiffs admit that 2001-2002 was a transition time for Streamwood's special education program. Plaintiffs admit that, as a result of the court decision *Corey H. v. Bd. of Educ. of Chicago*, the manner in which special education students receive classroom instruction in Illinois was altered. (Id. ¶ 26.) Because of the changes required under *Corey H. v. Bd. of Educ. of Chicago*, class sizes and teaching schedules in Streamwood's special education program were modified. (Id. ¶ 27.) Additionally, the Streamwood High School was scheduled to undergo renovation and construction during the 2001-2002 school year. (Id. ¶ 29.) Plaintiffs admit that

teachers were required to shift their schedules to accommodate these changes. And Plaintiffs admit that they were never punished, disciplined, or docked pay when scheduling errors occurred with substitute teachers. (Id. ¶¶ 59, 70.) This suggests that Plaintiffs were not held responsible or punished for the Special Education Department's shortcomings.

Defendants offer reasonable explanations for all of the actions taken, with the notable exception of the May 13, 2002 grievance hearing. However, the Plaintiffs have not presented any evidence that would lead this Court to find that the Defendants' presence at the grievance hearing constituted retaliation for the ISBE letter nor even that Defendants' presence at the grievance hearing prejudiced Plaintiffs in any meaningful way. Because Defendants have carried their burden and Plaintiffs have not, summary judgment is granted in favor of Defendants on Count I.

### B.    Count II

In Count II of their Complaint, the Plaintiffs allege Equal Protection violations under the Fourteenth Amendment and 42 U.S.C. § 1983 and claim that the Defendants treated them differently from similarly situated teachers in the district. Plaintiffs bring their Equal Protection claim as a "class of one." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under this theory, a plaintiff can show an Equal Protection violation where she has been intentionally and vindictively treated differently from other similarly situated individuals and there is no rational basis for the different treatment. *Id.*

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs contend: "In the case at bar, plaintiffs have shown that:

- They were the only teachers assigned multiple supervision periods;

- They were the only tenured teachers that were informed that they were going to be evaluated more than once per year;

- They were the only teachers who had extraneous personnel at a step III grievance hearing;

- They were the only teachers who requested substitute teachers that were not assigned."

(Pls.' Resp. Defs.' Mot. Summ. J. at 13.) This statement is remarkable because the Plaintiffs have not shown any of these things. Instead of producing their own evidence to support their Equal Protection claim, the Plaintiffs rely entirely on the Defendants' L.R. 56.1 Statement, which does not contain any evidence of different treatment of similarly situated teachers or irrational decision making by the Defendants. To the contrary, the Defendants' L.R. 56.1 Statement gives examples of other teachers being treated in a similar manner as the Plaintiffs (being removed from case manager assignments, (id. ¶ 64), and several occasions on which McFarlin failed to record students referred for discipline (id. ¶¶ 72-74)) and offers rational explanations for the Defendants' actions (Plaintiffs were given a unique schedule in the Fall of 2001 because they won their union grievance, (id. ¶ 39), and were scheduled for an increased number of classroom observations because there were many complaints and concerns about their teaching methods (id. ¶¶ 85-86)). It follows that the Plaintiffs cannot show that they have been treated differently from other similarly situated teachers nor can they show that the Defendants' actions were irrational.

Not only do the Plaintiffs fail to produce evidence supporting their Equal Protection claim, but the claim itself is essentially a repackaging and rearguing of the Plaintiffs'

unsuccessful First Amendment retaliation claim. In *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391-92 (7th Cir. 1988), the Seventh Circuit dismissed a teacher's Equal Protection claim when it found that, "plaintiff is not claiming he was classified on the basis of some forbidden characteristic, only that he was treated differently because he exercised his right to free speech." The Seventh Circuit considered the Equal Protection claim to be inappropriate as it was "a mere rewording of plaintiff's First Amendment-retaliation claim." *Id.* at 1392. In our case, the Plaintiffs' Response to Defendants' Motion for Summary Judgment promotes the Plaintiffs' *Equal Protection claim* with the statement, "There can be no question that a fair reading of the Complaint demonstrates that plaintiffs' claim is that the defendants joined together treated them unequally because of their protected speech." (Pls.' Resp. Defs.' Mot. Summ. J. at 13). The Court agrees with the Plaintiffs' characterization of their Equal Protection claim. Like the Seventh Circuit in *Vukadinovich*, this Court finds that the Plaintiffs' Equal Protection claim is a mere rewording of their First Amendment retaliation claim.

Because Plaintiffs have not produced sufficient evidence to support their Equal Protection claim and because the claim is merely a rewording of their failed First Amendment retaliation claim, summary judgment is granted in favor of Defendants on Count II.

Having drawn all inferences in a light most favorable to the Plaintiffs, the Court finds that there are no genuine issues as to any material facts and that Plaintiffs cannot show a First Amendment retaliation violation nor an Equal Protection violation. Accordingly, the Court grants Defendants' Motion for Summary Judgment on both Counts I and II and does not reach Defendants' other arguments for summary judgment.

**C.     Motion in Limine**

Since the Court has relied on admissible facts only in this decision, Defendants' Motion in Limine to Bar Evidence of Alleged Retaliation Before September 26, 2001 and After May 1, 2002, is now moot and it is therefore denied for mootness.


**III.  Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted and Defendants' Motion in Limine is denied.


**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated:  September 27, 2004.

Copies have been mailed to:

STEVEN E. GLINK, Esq.
Law Office of Steven E. Glink
3338 Commercial Avenue
Northbrook, IL 60062

PATRICIA J. WHITTEN, Esq.
ERIKA DILLON, Esq.
JULIE E. HEUBERGER, Esq.
Franczek Sullivan, P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606

Attorney for Plaintiffs

Attorneys for Defendants